TO:_____
YOU ARE HEREBY NOTIFIED TO PLEAD TO
THE ENCLOSED                WITHIN
TWENTY (20) DAYS OF SERVICE HEREOF
OR A DEFAULT JUDGMENT MAY BE
ENTERED AGAINST YOU.
BY:_____
      ATTORNEY

ATTORNEYS AT LAW
123 West Front Street
Berwick, Pennsylvania 18603
570.752.2766
FACSIMILE: 570.752.7894

WE HEREBY CERTIFY THAT THE WITHIN
IS A TRUE AND CORRECT COPY OF THE
ORIGINAL FILED IN THIS ACTION
BY:_____
        ATTORNEY

## IN THE COURT OF COMMON PLEAS
## LUZERNE COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ROSS, | : | Civil Action - Law |
| Plaintiff, | : | |
| vs. | : | |
| BLACK CREEK TOWNSHIP, JOSEPH LESCOWITCH, individually and in his official capacity, and BONNIE ADAMS, individually and in her official capacity, | : | Docket No. 2018-10981 |
| Defendants. | : | Jury Trial Demanded |

**YOU HAVE BEEN SUED IN COURT.** If you wish to defend against the claims set forth in the following pages, you must take prompt action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by Attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a Judgment may be entered against you by the court without further notice for the relief requested by the Plaintiff. You may lose money or property or other rights which are important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.**

**THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**
North Penn Legal Services
15 Public Square, Suite 410      —or—      21 North Church Street
Wilkes-Barre, Pennsylvania 18701            Hazleton, Pennsylvania 18201
(570) 825-8567                               (570) 455-9511



KEPNER, KEPNER & CORBA, P.C.

BY: _____

FRANKLIN E. KEPNER III, ESQUIRE
123 WEST FRONT STREET
BERWICK PA  18603
(570)752-2766
ID #323158

IN THE COURT OF COMMON PLEAS
LUZERNE COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ROSS, | : | Civil Action - Law |
| Plaintiff, | : | |
| vs. | : | |
| BLACK CREEK TOWNSHIP, | : | Docket No. 2018-10981 |
| JOSEPH LESCOWITCH, individually and | : | |
| in his official capacity, and BONNIE | : | |
| ADAMS, individually and in her official | : | |
| capacity, | : | |
| Defendants. | : | Jury Trial Demanded |

## AMENDED COMPLAINT

AND NOW, comes the Plaintiff, John Ross, by and through his attorneys, Kepner,

Kepner & Corba, P.C., and hereby files this Amended Complaint against the above-named

Defendants, and in support thereof, avers as follows:

1.     This cause of action arises under the Pennsylvania Whistleblower Law, 43 P.S. §

1423(a).  Venue is proper because all of the parties reside in this county.

2.     John Ross ("Plaintiff" or "Ross") is an adult individual who resides at 126 Shannon

Drive, Drums, Pa 18222 .

3.     Black Creek Township ("Black Creek" or the "Township") is a Second Class Township

organized pursuant to the laws of the Commonwealth of Pennsylvania with its offices located at

1330 Park Street, Rock Glen, Luzerne County, Pennsylvania.

4.     Joseph Lescowitch ("Lescowitch") is an adult individual who resides at 582 Hazle Street,

Sugarloaf, Pennsylvania.  Lescowitch is a Black Creek Township Supervisor and Roadmaster.

5.     Bonnie Adams ("Adams") is an adult individual who resides at 2468 Pine Street, Rock

Glen, Pennsylvania.  Adams is a Black Creek Township Supervisor and Roadmaster.

6.     At all times germane hereto, Plaintiff was an employee of Black Creek and was the road

foreman or crew leader in charge of supervising Black Creek's road crew from 2012 until his

termination on June 6, 2018.

7.     On or about June 17, 2017, Black Creek paved a street which is known locally as Hazle

Street.

8.     Hazle Street had developed large, deep cracks and potholes in the pavement because the

sewer lines were not properly backfilled when the road was originally paved.

9.     The pave job was completed by M&J Excavation, Inc. from Bloomsburg, Pennsylvania

under the supervision of the township engineer, RJD Engineering.

10.    Plaintiff believes and therefor avers that the Black Creek supervisors, including the two

individual defendants named above, voted to improve Hazle Street without advertising for bids

in accordance with the Second Class Township Code for the Commonwealth of Pennsylvania.

11.    Plaintiff discovered that Hazle Street's pavement was already developing large cracks

shortly after it had been repaired and he wanted Black Creek to fix Hazle Street while it was still

under warranty.

12.    Upon discovering the defects in the pavement, Plaintiff raised his concerns to Adams and

Lescowitch so the road could be fixed under the warranty at no cost to the Township.

13.    Further, because of the concerns that he had, Plaintiff requested that the individual

defendants investigate the condition of Hazle Street and why it had deteriorated so quickly after

being paved.

14.    The Plaintiff made complaints to Black Creek Supervisor Lescowitch, who dismissed the Plaintiff's complaints saying that the cracks were normal because of the depth of the sewer line.

15.    The Plaintiff said that Lescowitch was wrong in stating that the cracks were normal because of the depth of the sewer line.  Adams failed and refused to even look at the street and dismissed all of Plaintiff's concerns.

16.    Subsequently, Plaintiff voiced concerns about the condition of Hazle Street to newly elected Black Creek Township supervisor Saura Rohrbach ("Rohrbach").

17.    In response to Plaintiff's complaints, Rohrbach examined the street and contacted PennDOT so that she could obtain an independent engineer to examine the street.

18.    Thereafter, PennDOT provided an engineer, Jason A. Snyder, P.E. ("Snyder") through its Local Technical Assistance Program ("LTAP") to examine the road.

19.    Snyder provided a Tech Assist at no cost to Black Creek to investigate the pavement damage while it was still under warranty in order to address any concerns prior to the expiration of the warranty.

20.    On April 11, 2018, Rohrbach requested Plaintiff and two other members of Black Creek's road crew go with her and Snyder to examine the deteriorating surface of Hazle Street in Black Creek and Dump Road in Weston,  Pennsylvania.

21.    Upon arriving at Hazle Street, Plaintiff, Rohrbach, Snyder and the two road crew members began discussing the condition of the road.  Lescowitch drove past them and asked Rohrbach what the meeting was about and she explained that Snyder was with LTAP and they were examining the condition of Hazle Street, at which point Lescowitch drove away.

22.    Approximately 15 minutes later, Lescowitch returned to the Hazle Street location and exited his vehicle.  He immediately began verbally attacking Plaintiff and Rohrbach and

3

threatened to terminate Plaintiff and the two road crew members for inspecting Hazle Street with Rohrbach and Snyder, even though Plaintiff had been asked by a supervisor to accompany her to assess the road conditions.

23.     Lescowitch also admonished Snyder and criticized him for making an appointment to examine the road when the Black Creek road crew should have been sweeping streets.

24.     Snyder later issued a report on May 12, 2018, which confirmed Plaintiff's concerns that Hazle Street's pavement was failing.  A true and correct copy of Snyder's report is attached hereto as Exhibit "A."

25.     On April 27, 2018, Plaintiff was informed that he was being suspended with pay until a pre-disciplinary hearing could be held on May 5, 2018.  A true and correct copy of the letter informing Plaintiff of his suspension is attached hereto as Exhibit "B."

26.     Thereafter, the individual defendants voted to suspend Plaintiff without pay until they decided whether to reinstate, discipline or terminate him.

27.     On June 5, 2018, Adams and Lescowitch voted 2-1 to terminate Plaintiff's employment with Black Creek.

28.     At the June 5, 2018 meeting, Rohrbach read a statement prepared by Snyder that described the incident that occurred on April 11, 2018 and portrayed Lescowitch as the aggressor who became hostile with Plaintiff.  A true and correct copy of Snyder's statement is attached hereto as Exhibit "C."

29.     Subsequently, on June 6, 2018, Adams wrote Plaintiff a letter informing him that he was terminated effective immediately as a result of the April 11, 2018 incident.  A true and correct copy of the termination letter is attached hereto as Exhibit "D."

4

30.     This termination occurred less than one month after Snyder's report validating Plaintiff's concerns.

31.     The individual defendants undertook to terminate Plaintiff, even though they had before them information that Plaintiff acted appropriately and that Lescowitch was the aggressor who began screaming at Plaintiff.

32.     Plaintiff believes and therefor avers that he was terminated in violation of the Pennsylvania Whistleblower Law, 43 P.S. § 1421, *et seq.*

33.     The aforementioned statute provides as follows:

> (a) **Persons not to be discharged.**  No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

> (b) **Discrimination prohibited.**  No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

34.     Pennsylvania statute, found at 43 P.S. § 1424, provides as follows:

> (a) **Civil action.**  A person who alleges a violation of this Act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages or both within 180 days after the occurrence of the alleged violation.

### COUNT I - VIOLATION OF 43 P.S. § 1423(a)
### (against all Defendants)

35.     Plaintiff incorporates paragraphs 1 through 34 above as though set forth at length herein.

36.     As the result of being placed on unpaid suspension on May 5, 2018, Plaintiff was barred from performing any of his road foreman duties and deprived of his salary for performing those duties.

37.     As the result of being placed on unpaid suspension, Plaintiff was barred from entering any Township property or contacting any Township employees.

38.     On June 6, 2018, Plaintiff was terminated by the Township as a result of making a verbal good faith report to his employer about an instance of waste, specifically that Hazle Street's pave job was failing and it needed to be fixed while it was still under warranty.

39.     Plaintiff's termination was in violation of the Pennsylvania Whistleblower Law, 43 P.S. § 1423(a).

40.     As a direct and proximate result of this unlawful and retaliatory termination, Plaintiff has suffered emotional pain and mental anguish, together with serious economic hardship, including lost wages, in an amount to be proven at trial.

WHEREFORE, the Plaintiff demands judgment against the Defendants in an amount in excess of $50,000.00, including but not limited to back pay, damages, costs and fees for his wrongful discharge, and such other and further relief as this Court deems just and proper.

### COUNT II - DEFAMATION
### (against all Defendants)

41.     Plaintiff incorporates paragraphs 1 through 40 as though set forth at length herein.

42.     At the June 5, 2018 Township meeting, Lescowitch and Adams stated that Plaintiff was not fit for his job, even though he had never had any complaints in the previous six years he was employed by Black Creek.

43.     Lescowitch further stated that Plaintiff had acted aggressively toward Lescowitch and started a hostile verbal altercation on April 11, 2018.

6

44.     The statements made by Lescowitch and Adams at the Township meeting in front of approximately fifty citizens suggest that Plaintiff was incapable of adequately performing his job functions.

45.     The statements made by Lescowitch and Adams at the Township meeting suggest that Plaintiff was a hostile and aggressive person.

46.     The statements made by Lescowitch and Adams are of and concerning Plaintiff, and reasonably understood to be about Plaintiff.

47.     The defamatory statements about Plaintiff are false.

48.     The defamatory statements about Plaintiff constitute defamation *per se* because they tend to injure Plaintiff in his trade, business or profession and indicate that Plaintiff was involved in behavior incompatible with the proper conduct of his business, trade or profession.

49.     The defamatory statements have directly and proximately caused Plaintiff to suffer damages, including damage to his reputation, humiliation, embarrassment, mental suffering, shame and emotional distress.

WHEREFORE, the Plaintiff demands judgment against the Defendants in an amount in excess of $50,000.00, together with punitive damages, costs of suit, and such other relief as this Court deems just and proper.

### COUNT III - FREEDOM OF ASSOCIATION
#### (against all Defendants)

50.     Plaintiff incorporates paragraphs 1 through 49 as though set forth at length herein.

51.     At all times germane hereto, the two individual defendants exhibited a great amount of hostility toward their colleague, Dr. Saura Rohrbach, and her family.

52.     Both of the individual defendants made statements to Plaintiff to the effect that he was too close to the Rohrbach family, specifically Rohrbach's mother and father.

7

53.    On at a number of occasions, Adams commented to Plaintiff that he spent too much time on the Rohrbach property.

54.    Adams told Plaintiff that he should not let Rohrbach stop and talk to the road crew.

55.    Adams also stated that she was happiest when the Rohrbach family and another local family fought, because when that occurred, they were not involved in Township business.

56.    The individual defendants have made statements that they have seen Plaintiff hunting on the Rohrbach property.

56.    Adams and Lescowitch have expressed hostile attitudes toward the Rohrbach family and toward Ross for associating with the Rohrbach family.

57.    The First Amendment recognizes and protects the right to freedom of association.

58.    It is believed and therefor averred that Plaintiff was terminated, at least in part, because of his association with the Rohrbach family.

59.    Defendants have violated Plaintiff's freedom of association by punishing him and retaliating against him as a result of associating with the Rohrbach family.

WHEREFORE, the Plaintiff demands judgment against the Defendants in an amount in excess of $50,000.00, together with costs of suit and such other relief as this Court deems just and proper.

KEPNER, KEPNER & CORBA, P.C.

Dated:  9/25/18

By: _____
Franklin E. Kepner, Jr., Esquire
Attorney for Plaintiff
123 West Front Street
Berwick, PA 18603
(570) 752-2766
I.D. No 26156

By: _____
Franklin E. Kepner III, Esquire
Attorney for Plaintiff
123 West Front Street
Berwick, PA 18603
(570) 752-2766
I.D. No. 323158

S:\Clients 7000 to 7499\7348 Ross, John\Complaint - 7-19-18.wpd

COMMONWEALTH OF PENNSYLVANIA )
                                          ) ss:

COUNTY OF COLUMBIA            )

        FRANKLIN E. KEPNER, III. being duly sworn according to law does depose and say that he is the attorney for the Plaintiff, that the Plaintiff is not available within the time required, that he is authorized to make this affidavit on behalf of the Plaintiff, that the source of his knowledge is directly from the Plaintiff, and that all the facts contained in the foregoing document are true and correct to the best of his knowledge, information and belief.

                          FRANKLIN E. KEPNER, III.

SWORN TO AND SUBSCRIBED BEFORE ME
THIS 20 DAY OF September, 2018

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Valerie K. Densberger, Notary Public
Berwick Boro, Columbia County
My commission expires October 21, 2019

## CERTIFICATION

I, Franklin E. Kepner, III, Esquire, certify that this filing complies with the provisions of the **Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts** that require filing confidential information and documents differently than an non-confidential information and documents.

Respectfully Submitted.

KEPNER, KEPNER & CORBA, P.C.

FRANKLIN E. KEPNER, III, ESQUIRE
Attorney for Plaintiff
123 West Front Street
Berwick, PA 18603
(570)752-2766
I.D. No.  323158

# Exhibit A

9/5/2018                    Engineering Report from PennDOT/LTAP... - Black Creek Township Concerned Citizens | Facebook

Email or Phone                Password

Sign Up                                                                        Log In

Forgot account?



**Black Creek Township Concerned Citizens**
May 12 ·

Engineering Report from PennDOT/LTAP engineer for Hazle Street and
Dump Road in Weston, Gross Road, and a few others in Black Creek. Dr.
Rohrbach requested for this engineer to come and review these roads in our
township. This was free, to our township.

Supervisor Rohrbach-
It was very nice to meet with you (1) and your road crew (3) on Thursday
morning or your Technical Assistance Request (17370). As I noted we would
cover 3 topics:

1. You had a question on the quality assurance and potential long term
performance of the paving on Hazle Street (T-332). As we discussed, the
Township staff was not involved in the QA of the paving and this was
managed by the Township Engineer. I would recommend that you request
the daily inspection reports for the contracted work. It is difficult to conduct
a forensic analysis of the pavement without, reports, density testing, roller
pattern, JMFs, certifications, photos, corers, etc. However, a visual analysis
of the pavement indicates that the mat appears in good condition, with very
minor raveling, possibly from truck or paver segregation. The failures appear
to be potentially base failures propagating/reflecting from the milled areas
that were reported to have been mill/filled. It is difficult to make a
determination without seeing the underlying soil/subbase material or
knowing where the mill/fills were located. The centerline failure appears to
be a potential joint failure resulting from "starving the joint"; the joint may be
improperly compacted, resulting in further joint failure in the future. Please
direct the contractor to seal this joint (entire length) as soon as possible as it
is within the warranty period. I recommend you discuss this situation with
the Township's Solicitor and Engineer and encourage the contractor to
extend the warranty on this joint instead of removal and replacement. As we
discussed, the Township also has the option in the 408 to accept
substandard work at ½ payment which would entitle the Township to a
refund. In order to prove the joint is improperly constructed, we would need
to do a few things. First contact Municipal Services; I've already done that.
Second obtain all available records. Third obtain cores through the joint. If
the joint is not properly compacted, it will be evident in the cores. Example
photos to follow.

2. We discussed dirt and gravel maintenance. It is unfortunate that you were
unable to attend the dirt and gravel class in Bloomsburg last week. I will be
teaching the class again on the following dates:
5/2 in Gordon, PA (about 30 miles)
5/7 in Athens, PA (about 90 miles)
5/8 in Tunkhannock, PA (about 60 miles)
5/9 in Mansfield, PA (about 110 miles)
Hopefully you and the crew will be able to attend one of these classes.
Although you do have an ESM qualified staff member, I would encourage
you to at a minimum send your road foreman to this class. The person
directly overseeing all construction and maintenance in the field on a regular
basis should be trained. For example, our Township has 2 ESM trained
staff. As the Engineer/Public Works Director (part-time employee/ESM
trained); I complete all the grant applications, designs, cost estimates and
permits; I am only out from time-to-time during construction. Prior to doing
any of that, I meet with my Roadmaster (full time employee/ESM trained)
and review our projects; he manages all construction. Please note neither of

Related Pages

**Hazleton News 1**
News & Media Website

**Scotch Valley Bar & Restaurant**
Restaurant

**Skook News**
News & Media Website

**Hazleton RAPID TRANSIT SYSTEM**
Community Organization

English (US) · Español ·
Português (Brasil) · Français (France) ·
Deutsch

Privacy · Terms · Advertising · Ad Choices ·
Cookies · More
Facebook © 2018

**See more of Black Creek Township Concerned Citizens on Facebook**

Log In          or          Create New Account

Township design sketches and quantities for you to create a cost estimate and submit you grant application. You will also want to discuss Hill Top Drive (T-316) with Mr. Schlauch as a grant opportunity. As both roads are entrenched, eroding with deep rills and ditches, causing sedimentation of nearby waterways, concentrating flow on extremely steep slopes, he will need to advise you as to which road he would like you to address first. I provided Mr. Schlauch with a verbal assessment of each of the two roads, but you will need to meet with him on site. Please also discuss the HOA portion of the roadway with him.

3. Gross Road (T-310) is a low volume dead end (partially chipped/paved) road which it appears that the residents may be self-maintaining. I would caution the Township in allowing residents to place materials in the Township's right-of-way in an attempt to stabilize the roadway. The fines and gravel (possibly AASHTO 8's) are not going to stabilize the roadway and may open the Township to higher maintenance cost and/or liability in the future. This road may qualify for low volume funding through Mr. Schlauch. I would encourage the Township to consider full depth reclamation with a paved asphalt surface as well as both surface and subsurface drainage improvements. As it appears this road was "dead ended" prior to current Liquid Fuels requirements so an 80' cul-de-sac is not required; however, the Township should consider installing a "tee" turnaround for garbage trucks, plows, and emergency vehicles.

You had mentioned a few safety related issues, which I will refer to Mr. Patrick Wright, PE at LTAP. You should request an additional tech assist to review location, warrant, and condition of the guiderail in question. You should also request that Mr. Wright review the intersection sight distance and alignment of the intersection in question. I also note that numerous of your roads appear improperly signed, please discuss this issue with Mr. Wright.

I recommend that you and the crew continue your LTAP maintenance training with Asphalt Common Maintenance Problems and Unpaved Roads, followed by FDR, Seal Coats, Drainage and Posting & Bonding. Based on the signing, you should also sign up for Road Safety Audits, Traffic Sign Basics, and Speed Limits. The LTAP classes are free of charge and held at convenient locations throughout Pennsylvania. If there is a specific class you would like to take or would like to host at your facility, classes can be scheduled through your regional planning commission or by calling LTAP directly at (800) FOR-LTAP and speaking to Barbara Jean, Tom, or Lou. You have a very nice facility and it would be great to teach a class for you at your facility.

Sincerely,

PennDOT LTAP Engineer

Jason A. Snyder, PE, F ASCE

See more of **Black Creek Township Concerned Citizens** on Facebook

| Log In | or | Create New Account |
|--------|----|--------------------|

# Exhibit B

73484

# DONALD G. KARPOWICH ATTORNEY-AT-LAW, P.C.

85 Drasher Road
Drums, PA 18222

Phone: (570) 788-6647
Fax: (570) 788-0654
www.karpowichlaw.com

April 27, 2018

John Ross
126 Shannon Drive
Drums, PA 18222

Dear Mr. Ross:

I am writing to you as the Solicitor for Black Creek Township.

This letter is being written to inform you that the Black Creek Township Board of Supervisors are requesting to meet with you on Saturday, May 5, 2018 at 10:00 a.m. at the Black Creek Township Municipal Building, 1984 Tomhicken Road, Rock Glen, PA 18246. This is a pre-disciplinary meeting as a result of the incident that occurred on April 11, 2018 at approximately 9:00 AM with Supervisor Joseph Lescowitch.

Depending on the outcome of the meeting, the Board of Supervisors may reprimand you, suspend you without pay, or dismiss you from your employment with the Township.

In the interim, you are suspended from your employment with the Township with pay. You are also not to contact any Township employee or enter upon any Township property while under suspension.

Very Truly Yours,

Donald G. Karpowich, Esquire

cc:   Bonnie Adams, Chairperson, Black Creek Township Board of Supervisors

# Exhibit C

7348

 Gmail

Dr. Saura Rohrbach <supervisorrohrbach@gmail.com>

## Black Creek Summary

**GRS Design** <grsdesignsolutions@comcast.net>
To: "Dr. Saura Rohrbach" <supervisorrohrbach@gmail.com>

Wed, May 2, 2018 at 10:58 PM

Supervisor Rohrbach;
I prepared this statement regarding the incident which occurred on 4/11. I apologize but I don't remember both your roadworkers' names.

On the morning of 4/11/18, I
was providing a Tech Assist (TA) to Supervisor Rohrbach (1) at Black Creek Township through my position at PennDOTs Local Technical Assistance Program (LTAP). When I arrived, Supervisor Rohrbach asked me to look at Hazleton Street (T-332) and asked if the road crew (3) could attend the TA to provide insight into the background of the project. I indicated that the TA is open to any participants the Township chose to invite and I felt it was an excellent opportunity to provide knowledge transfer both ways. Supervisor Rohrbach took me out to the shop and introduced me to the Road Foreman, John and Roadworkers, Brad? and ??.

We proceeded out to the site to review potential concerns (see report). Upon arriving at the site, a dark/black pickup with decals in rear window drove by and the driver asked us what we were doing. Supervisor Rohrbach indicated I was asked to come out through LTAP to look at the road damage. Pickup truck left.

Approximately 5-10 minutes later, the pickup truck returned and parked. The driver did not identify himself and in an openly hostile manner approached me and asked why I was out with Supervisor Rohrbach and the crew. Supervisor Rohrbach indicated that my services were provided at no charge by PennDOT and this was a review of pavement damage that was still under warranty in order to address concerns prior to warranty expiration. In addition, I could ask the Township employees questions directly and explain what the Township needed to do to protect their investment and obtain warranty repairs; also providing a training opportunity for the crew.

Driver still did not identify himself and told me that I was taking up the crew's time and I should schedule training more appropriately in the future. I indicated that I was there at the Township's request. Foreman John stepped between us indicated to unidentified driver, that "PennDOT is here to help the Township" and that I was a professional engineer there at the Township request and told the unidentified driver that he had no right or cause to address me the way he was.

I was able to determine that the driver was another Supervisor (Joe Lescowitch (1)) due to continued interaction between Supervisor Rohrbach and Road Foreman John. The interaction became very hostile from Supervisor Lescowitch at which time he directed the road crew to return to the garage or they "could find new jobs tomorrow". Road Foreman John asked Supervisor Lescowitch to repeat his statement, asking "are you (Joe Lescowitch) threatening my (Foreman John) job?" Supervisor Lescowitch repeated that the crew better get back to the shed and get back to work (conduct sweeping operations) or they could all find new jobs tomorrow. I indicated that Supervisor Lescowitch could join the training. He left the site.

1348 b

I thanked Foreman John and the crew for providing background information on the project and asked them to return to their other duties. I indicated that I would provide another training opportunity and assistance to the Township in the future upon Supervisor Rohrbach's request. John and the crew returned to the shed immediately. I continued the TA with Supervisor Rohrbach, road concerns documented in separate report.

Jason A. Snyder, PE, F ASCE
4/16/18

# Exhibit D

7343

### BLACK CREEK TOWNSHIP SUPERVISORS
P.O. BOX 3     LUZERNE COUNTY
ROCK GLEN, PA. 18246
PHONE (570) 384-3206          FAX (570) 384-3799

June 6, 2018

John Ross
126 Shannon Drive
Drums, PA 18222

Dear Mr. Ross:

This letter is being written to inform you that as a result of the incident that occurred on April 11, 2018 at approximately 9:00 AM with Supervisor Joseph Lescowitch, your position with Black Creek Township is terminated effectively immediately.   A majority of the Board of Supervisors voted in favor of your termination at the Black Creek Township Regular Meeting of June 5, 2018.

It is my understanding that you have made arrangements with Supervisor Rohrbach to return your keys and retrieve your belongings with a Constable being present.

Sincerely,

Bonnie Adams, Chairperson

PROTHONOTARY LUZERNE COUNTY
FILED OCT 15 '18 AM 10:01

SIANA, BELLWOAR & McANDREW, LLP
By:    Andrew J. Bellwoar, I.D. #54096
        Robert M. Tucker, Jr., I.D. #318586
941 Pottstown Pike, Suite 200
Chester Springs, PA 19425
(610) 321-5500

**COUNSEL FOR DEFENDANTS BLACK CREEK TOWNSHIP, JOSEPH LESCOWITCH AND BONNIE ADAMS**

| | |
|---|---|
| John Ross, | LUZERNE COUNTY COURT OF |
|         Plaintiff, | COMMON PLEASE |
|     v. | No. 2018-10981 |
| Black Creek Township, et al., | CIVIL ACTION LAW |
|         Defendants. | |

### ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

Kindly enter the appearance of Andrew J. Bellwoar, Esquire on behalf of Defendants, Black

Creek Township, Joseph Lescowitch and Bonnie Adams, in the above-captioned matter.

**SIANA, BELLWOAR & McANDREW, LLP**

By:                            

Andrew J. Bellwoar, Esquire
Robert M. Tucker, Jr., Esquire
Attorneys for Defendants
Black Creek Township, Joseph Lescowitch and
Bonnie Adams

PROTHONOTARY LUZERNE COUNTY
FILED OCT 5 '18 AM 10:01

SIANA, BELLWOAR & McANDREW, LLP
By:    Andrew J. Bellwoar, I.D. #54096
        Robert M. Tucker, Jr., I.D. #318586
941 Pottstown Pike, Suite 200
Chester Springs, PA 19425
(610) 321-5500

COUNSEL FOR DEFENDANTS BLACK CREEK
TOWNSHIP, JOSEPH LESCOWITCH AND
BONNIE ADAMS

| | | |
|---|---|---|
| John Ross, | : | LUZERNE COUNTY COURT OF |
| Plaintiff, | : | COMMON PLEASE |
| | : | |
| v. | : | No. 2018-10981 |
| | : | |
| Black Creek Township, et al., | : | CIVIL ACTION LAW |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this day a true and correct copy of the

Entry of Appearance of Andrew J. Bellwoar, Esquire was served by first class mail, postage

prepaid, and addressed to the following:

Franklin E. Kepner, Jr., Esquire
Franklin E. Kepner, III, Esquire
Kepner, Kepner & Corba, P.C.
123 West Front Street
Berwick, PA 18603

SIANA, BELLWOAR & McANDREW, LLP

Date:  10/3/18          By:  _____

Andrew J. Bellwoar, Esquire
Robert M. Tucker, Jr., Esquire
Attorneys for Defendants
Black Creek Township, Joseph Lescowitch and
Bonnie Adams

PROTHONOTARY LUZERNE COUNTY
FILED OCT 5 '18 PM 3:03

SIANA, BELLWOAR & McANDREW, LLP
By:     Andrew J. Bellwoar, I.D. #54096
        Robert M. Tucker, Jr., I.D. #318586
941 Pottstown Pike, Suite 200
Chester Springs, PA 19425
(610) 321-5500

COUNSEL FOR DEFENDANTS BLACK CREEK
TOWNSHIP, JOSEPH LESCOWITCH AND
BONNIE ADAMS

| | | |
|---|---|---|
| John Ross, | : | LUZERNE COUNTY COURT OF |
| Plaintiff, | : | COMMON PLEASE |
| | : | |
| v. | : | No. 2018-10981 |
| | : | |
| Black Creek Township, et al., | : | CIVIL ACTION LAW |
| | : | |
| Defendants. | : | |

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

Kindly enter the appearance of Robert M. Tucker, Jr., Esquire on behalf of Defendants,

Black Creek Township, Joseph Lescowitch and Bonnie Adams, in the above-captioned matter.

SIANA, BELLWOAR & McANDREW, LLP

By:     _____
        Robert M. Tucker, Jr., Esquire
        Attorneys for Defendants
        Black Creek Township, Joseph Lescowitch and
        Bonnie Adams

SIANA, BELLWOAR & McANDREW, LLP
By:     Andrew J. Bellwoar, I.D. #54096
        Robert M. Tucker, Jr., I.D. #318586
941 Pottstown Pike, Suite 200
Chester Springs, PA 19425
(610) 321-5500

PROTHONOTARY LUZERNE COUNTY
FILED OCT 5 '18 AM10:01

COUNSEL FOR DEFENDANTS BLACK CREEK
TOWNSHIP, JOSEPH LESCOWITCH AND
BONNIE ADAMS

| | |
|---|---|
| John Ross, | LUZERNE COUNTY COURT OF |
|       Plaintiff, | COMMON PLEASE |
| | |
|       v. | No. 2018-10981 |
| | |
| Black Creek Township, et al., | CIVIL ACTION LAW |
| | |
|       Defendants. | |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this day a true and correct copy of the

Entry of Appearance of Robert M. Tucker, Jr., Esquire was served by first class mail, postage

prepaid, and addressed to the following:

Franklin E. Kepner, Jr., Esquire
Franklin E. Kepner, III, Esquire
Kepner, Kepner & Corba, P.C.
123 West Front Street
Berwick, PA 18603

SIANA, BELLWOAR & McANDREW, LLP

Date: _10/3/2018_          By: _____

Andrew J. Bellwoar, Esquire
Robert M. Tucker, Jr., Esquire
Attorneys for Defendants
Black Creek Township, Joseph Lescowitch and
Bonnie Adams

# Supreme Court of Pennsylvania

## Court of Common Pleas
### Civil Cover Sheet

Luzerne _____ **County**

| For Prothonotary Use Only: |
|---|
| Docket No: |
| 2018-10981 |

*The information collected on this form is used solely for court administration purposes.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Transfer from Another Jurisdiction
- ☐ Petition
- ☐ Declaration of Taking

| Lead Plaintiff's Name: John Ross | Lead Defendant's Name: Black Creek Township |
|---|---|

**Are money damages requested?** ☒ Yes   ☐ No

Dollar Amount Requested: (check one)  ☐ within arbitration limits  ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes   ☒ No   **Is this an *MDJ Appeal*?** ☐ Yes   ☒ No

Name of Plaintiff's/Appellant's Attorney:  Franklin E. Kepner, Jr.

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**SECTION B**

**Nature of the Case:**   Place an "X" to the left of the **ONE** case category that most accurately describes your *PRIMARY CASE*. If you are making more than one type of claim, check the one that you consider most important.

**TORT** (do not include Mass Tort)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (does not include mass tort)
- ☐ Slander/Libel/ Defamation
- ☐ Other:

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☒ Other:

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:

**CONTRACT** (do not include Judgments)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other:

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☒ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☒ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☒ Other:
  Violation of Whistleblower Law

*Updated 1/1/2011*

09/27/2018 08:21 FAX  5703843799          BLACKCREEK-TWP                                    ☐ 002/026

TO:_____
YOU ARE HEREBY NOTIFIED TO PLEAD TO
THE ENCLOSED                 WITHIN
TWENTY (20) DAYS OF SERVICE HEREOF
OR A DEFAULT JUDGMENT MAY BE
ENTERED AGAINST YOU.
BY:_____
    ATTORNEY

KEPNER, KEPNER & CORBA, P.C.
ATTORNEYS AT LAW
123 West Front Street
Berwick, Pennsylvania 18603
570.752.2766
FACSIMILE: 570.752.7994

WE HEREBY CERTIFY THAT THE WITHIN
IS A TRUE AND CORRECT COPY OF THE
ORIGINAL FILED IN THIS ACTION
BY:_____
        ATTORNEY

## IN THE COURT OF COMMON PLEAS
## LUZERNE COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ROSS, | : | Civil Action - Law |
| Plaintiff, | : | |
| vs. | : | |
| BLACK CREEK TOWNSHIP, | : | Docket No. |
| JOSEPH LESCOWITCH, individually and | : | |
| in his official capacity, and BONNIE | : | |
| ADAMS, individually and in her official | : | |
| capacity, | : | |
| Defendants. | : | Jury Trial Demanded |

**YOU HAVE BEEN SUED IN COURT.** If you wish to defend against the claims set forth in the following pages, you must take prompt action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by Attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you and a Judgment may be entered against you by the court without further notice for the relief requested by the Plaintiff.  You may lose money or property or other rights which are important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.**

**THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**
North Penn Legal Services
15 Public Square, Suite 410          —or—          21 North Church Street
Wilkes-Barre, Pennsylvania 18701                   Hazleton, Pennsylvania  18201
(570) 825-8567                                     (570) 455-9511

KEPNER, KEPNER & GORBA, P.C.

BY:
FRANKLIN E. KEPNER III, ESQUIRE
123 WEST FRONT STREET
BERWICK PA 18603
(570)752-2766
ID #323158

IN THE COURT OF COMMON PLEAS
LUZERNE COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ROSS, | : | Civil Action - Law |
| Plaintiff, | : | |
| vs. | : | |
| BLACK CREEK TOWNSHIP, JOSEPH LESCOWITCH, individually and in his official capacity, and BONNIE ADAMS, individually and in her official capacity, | : | Docket No. |
| Defendants. | : | Jury Trial Demanded |

## COMPLAINT

AND NOW, comes the Plaintiff, John Ross, by and through his attorneys, Kepner, Kepner & Corba, P.C., and hereby files this Complaint against the above-named Defendants, and in support thereof, avers as follows:

1. This cause of action arises under the Pennsylvania Whistleblower Law, 43 P.S. § 1423(a). Venue is proper because all of the parties reside in this county.

2. John Ross ("Plaintiff" or "Ross") is an adult individual who resides at 126 Shannon Drive, Drums, Pa 18222 .

3. Black Creek Township ("Black Creek" or the "Township") is a Second Class Township organized pursuant to the laws of the Commonwealth of Pennsylvania with its offices located at 1330 Park Street, Rock Glen, Luzerne County, Pennsylvania.

4. Joseph Lescowitch ("Lescowitch") is an adult individual who resides at 582 Hazle Street, Sugarloaf, Pennsylvania. Lescowitch is a Black Creek Township Supervisor and Roadmaster.

09/27/2018 08:21 FAX  5703843799          BLACKCREEK-TWP                    ☑005/026

5.      Bonnie Adams ("Adams") is an adult individual who resides at 2468 Pine Street, Rock

Glen, Pennsylvania.  Adams is a Black Creek Township Supervisor and Roadmaster.

6.      At all times germane hereto, Plaintiff was an employee of Black Creek and was the road

foreman or crew leader in charge of supervising Black Creek's road crew from 2012 until his

termination on June 6, 2018.

7.      On or about June 17, 2017, Black Creek paved a street which is known locally as Hazle

Street.

8.      Hazle Street had developed large, deep cracks and potholes in the pavement because the

sewer lines were not properly backfilled when the road was originally paved.

9.      The pave job was completed by M&J Excavation, Inc. from Bloomsburg, Pennsylvania

under the supervision of the township engineer, RJD Engineering.

10.     Plaintiff believes and therefor avers that the Black Creek supervisors, including the two

individual defendants named above, voted to improve Hazle Street without advertising for bids

in accordance with the Second Class Township Code for the Commonwealth of Pennsylvania.

11.     Plaintiff discovered that Hazle Street's pavement was already developing large cracks

shortly after it had been repaired and he wanted Black Creek to fix Hazle Street while it was still

under warranty.

12.     Upon discovering the defects in the pavement, Plaintiff raised his concerns to Adams and

Lescowitch so the road could be fixed under the warranty at no cost to the Township.

13.     Further, because of the concerns that he had, Plaintiff requested that the individual

defendants investigate the condition of Hazle Street and why it had deteriorated so quickly after

being paved.

14.     The Plaintiff made complaints to Black Creek Supervisor Lescowitch, who dismissed the Plaintiff's complaints saying that the cracks were normal because of the depth of the sewer line.

15.     The Plaintiff said that Lescowitch was wrong in stating that the cracks were normal because of the depth of the sewer line. Adams failed and refused to even look at the street and dismissed all of Plaintiff's concerns.

16.     Subsequently, Plaintiff voiced concerns about the condition of Hazle Street to newly elected Black Creek Township supervisor Saura Rohrbach ("Rohrbach").

17.     In response to Plaintiff's complaints, Rohrbach examined the street and contacted PennDOT so that she could obtain an independent engineer to examine the street.

18.     Thereafter, PennDOT provided an engineer, Jason A. Snyder, P.E. ("Snyder") through its Local Technical Assistance Program ("LTAP") to examine the road.

19.     Snyder provided a Tech Assist at no cost to Black Creek to investigate the pavement damage while it was still under warranty in order to address any concerns prior to the expiration of the warranty.

20.     On April 11, 2018, Rohrbach requested Plaintiff and two other members of Black Creek's road crew go with her and Snyder to examine the deteriorating surface of Hazle Street in Black Creek and Dump Road in Weston, Pennsylvania.

21.     Upon arriving at Hazle Street, Plaintiff, Rohrbach, Snyder and the two road crew members began discussing the condition of the road. Lescowitch drove past them and asked Rohrbach what the meeting was about and she explained that Snyder was with LTAP and they were examining the condition of Hazle Street, at which point Lescowitch drove away.

22.     Approximately 15 minutes later, Lescowitch returned to the Hazle Street location and exited his vehicle. He immediately began verbally attacking Plaintiff and Rohrbach and

3

30.     This termination occurred less than one month after Snyder's report validating Plaintiff's concerns.

31.     The individual defendants undertook to terminate Plaintiff, even though they had before them information that Plaintiff acted appropriately and that Lescowitch was the aggressor who began screaming at Plaintiff.

32.     Plaintiff believes and therefor avers that he was terminated in violation of the Pennsylvania Whistleblower Law, 43 P.S. § 1421, *et seq.*

33.     The aforementioned statute provides as follows:

> (a) **Persons not to be discharged.**  No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

> (b) **Discrimination prohibited.**  No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

34.     Pennsylvania statute, found at 43 P.S. § 1424, provides as follows:

> (a) **Civil action.**  A person who alleges a violation of this Act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages or both within 180 days after the occurrence of the alleged violation.

### COUNT I - VIOLATION OF 43 P.S. § 1423(a)
**(against all Defendants)**

35.     Plaintiff incorporates paragraphs 1 through 34 above as though set forth at length herein.

threatened to terminate Plaintiff and the two road crew members for inspecting Hazle Street with Rohrbach and Snyder, even though Plaintiff had been asked by a supervisor to accompany her to assess the road conditions.

23.     Lescowitch also admonished Snyder and criticized him for making an appointment to examine the road when the Black Creek road crew should have been sweeping streets.

24.     Snyder later issued a report on May 12, 2018, which confirmed Plaintiff's concerns that Hazle Street's pavement was failing. A true and correct copy of Snyder's report is attached hereto as Exhibit "A."

25.     On April 27, 2018, Plaintiff was informed that he was being suspended with pay until a pre-disciplinary hearing could be held on May 5, 2018. A true and correct copy of the letter informing Plaintiff of his suspension is attached hereto as Exhibit "B."

26.     Thereafter, the individual defendants voted to suspend Plaintiff without pay until they decided whether to reinstate, discipline or terminate him.

27.     On June 5, 2018, Adams and Lescowitch voted 2-1 to terminate Plaintiff's employment with Black Creek.

28.     At the June 5, 2018 meeting, Rohrbach read a statement prepared by Snyder that described the incident that occurred on April 11, 2018 and portrayed Lescowitch as the aggressor who became hostile with Plaintiff. A true and correct copy of Snyder's statement is attached hereto as Exhibit "C."

29.     Subsequently, on June 6, 2018, Adams wrote Plaintiff a letter informing him that he was terminated effective immediately as a result of the April 11, 2018 incident. A true and correct copy of the termination letter is attached hereto as Exhibit "D."

36.    As the result of being placed on unpaid suspension on May 5, 2018, Plaintiff was barred from performing any of his road foreman duties and deprived of his salary for performing those duties.

37.    As the result of being placed on unpaid suspension, Plaintiff was barred from entering any Township property or contacting any Township employees.

38.    On June 6, 2018, Plaintiff was terminated by the Township as a result of making a verbal good faith report to his employer about an instance of waste, specifically that Hazle Street's pave job was failing and it needed to be fixed while it was still under warranty.

39.    Plaintiff's termination was in violation of the Pennsylvania Whistleblower Law, 43 P.S. § 1423(a).

40.    As a direct and proximate result of this unlawful and retaliatory termination, Plaintiff has suffered emotional pain and mental anguish, together with serious economic hardship, including lost wages, in an amount to be proven at trial.

WHEREFORE, the Plaintiff demands judgment against the Defendants in an amount in excess of $50,000.00, including but not limited to back pay, damages, costs and fees for his wrongful discharge, and such other and further relief as this Court deems just and proper.

## COUNT II - DEFAMATION
### (against all Defendants)

41.    Plaintiff incorporates paragraphs 1 through 40 as though set forth at length herein.

42.    At the June 5, 2018 Township meeting, Lescowitch and Adams stated that Plaintiff was not fit for his job, even though he had never had any complaints in the previous six years he was employed by Black Creek.

43.    Lescowitch further stated that Plaintiff had acted aggressively toward Lescowitch and started a hostile verbal altercation on April 11, 2018.

6

09/27/2018 08:22 FAX   5703843799          BLACKCREEK-TWP                    ☑ 010/026

44.    The statements made by Lescowitch and Adams at the Township meeting in front of approximately fifty citizens suggest that Plaintiff was incapable of adequately performing his job functions.

45.    The statements made by Lescowitch and Adams at the Township meeting suggest that Plaintiff was a hostile and aggressive person.

46.    The statements made by Lescowitch and Adams are of and concerning Plaintiff, and reasonably understood to be about Plaintiff.

47.    The defamatory statements about Plaintiff are false.

48.    The defamatory statements about Plaintiff constitute defamation *per se* because they tend to injure Plaintiff in his trade, business or profession and indicate that Plaintiff was involved in behavior incompatible with the proper conduct of his business, trade or profession

49.    The defamatory statements have directly and proximately caused Plaintiff to suffer damages, including damage to his reputation, humiliation, embarrassment, mental suffering, shame and emotional distress.

WHEREFORE, the Plaintiff demands judgment against the Defendants in an amount in excess of $50,000.00, together with punitive damages, costs of suit, and such other relief as this Court deems just and proper.

### COUNT III - FREEDOM OF ASSOCIATION
#### (against all Defendants)

50.    Plaintiff incorporates paragraphs 1 through 49 as though set forth at length herein.

51.    At all times germane hereto, the two individual defendants exhibited a great amount of hostility toward their colleague, Dr. Saura Rohrbach, and her family.

52.    Both of the individual defendants made statements to Plaintiff to the effect that he was too close to the Rohrbach family, specifically Rohrbach's mother and father.

7

53.    On at a number of occasions, Adams commented to Plaintiff that he spent : o much time on the Rohrbach property.

54.    Adams told Plaintiff that he should not let Rohrbach stop and talk to the ro d crew.

55.    Adams also stated that she was happiest when the Rohrbach family and an ther local family fought, because when that occurred, they were not involved in Township b siness.

56.    The individual defendants have made statements that they have seen Plaint ff hunting on the Rohrbach property.

56.    Adams and Lescowitch have expressed hostile attitudes toward the Rohrba h family and toward Ross for associating with the Rohrbach family.

57.    The First Amendment recognizes and protects the right to freedom of asso ation.

58.    It is believed and therefor averred that Plaintiff was terminated, at least in p rt, because of his association with the Rohrbach family.

59.    Defendants have violated Plaintiff's freedom of association by punishing h n and retaliating against him as a result of associating with the Rohrbach family.

WHEREFORE, the Plaintiff demands judgment against the Defendants in an amount in excess of $50,000.00, together with costs of suit and such other relief as this Court deems just and proper.

KEPNER, KEPNER & CORREA, P.C

Dated: 9 / 20 / 2018

By: _____
Franklin E. Kepner, Jr., Esquire
Attorney for Plaintiff
123 West Front Street
Berwick, PA 18603
(570) 752-2766
I.D. No 26156

By: _____
Franklin E. Kepner III, Esquire
Attorney for Plaintiff
123 West Front Street
Berwick, PA 18603
(570) 752-2766
I.D. No. 323158

S:\Clients 7000 to 7499\7348 Ross, John\Complaint - 7-19-18.wpd

9

COMMONWEALTH OF PENNSYLVANIA  )
                                                            )  ss:
COUNTY OF COLUMBIA                     )


FRANKLIN E. KEPNER, III. being duly sworn according to law does depose and say that he is the attorney for the Plaintiff, that the Plaintiff is not available within the time required, that he is authorized to make this affidavit on behalf of the Plaintiff, that the source of his knowledge is directly from the Plaintiff, and that all the facts contained in the foregoing document are true and correct to the best of his knowledge, information and belief.

FRANKLIN E. KEPNER, III.


SWORN TO AND SUBSCRIBED BEFORE ME
THIS ____ DAY OF _____, 201__

COMMONWEALTH OF PENNSYLVAN
NOTARIAL SEAL
Valerie K. Densberger, Notary Public
Berwick Boro, Columbia County
My commission expires October 21, 201

09/27/2018 08:23 FAX   5703843799        BLACKCREEK-TWP                              ☑014/026

## CERTIFICATION

I, Franklin E. Kepner, III, Esquire, certify that this filing complies with the

provisions of the **Public Access Policy of the Unified Judicial System of Pennsylvania:**

**Case Records of the Appellate and Trial Courts** that require filing confidential

information and documents differently than an non-confidential information and

documents.

Respectfully Submitted.

KEPNER, KEPNER & CORBA, P. C.

FRANKLIN E. KEPNER, III, ESQUIRE
Attorney for Plaintiff
123 West Front Street
Berwick, PA 18603
(570)752-2766
I.D. No. 323158

# Exhibit A

9/5/2018                    Engineering Report from PennDOT/LTAP... - Black Creek Township Concerned Citizens Facebook

Email or Phone          Password

Sign Up                                                                          Log In

Forgot account?

**Black Creek Township Concerned Citizens**
May 12 ·

Engineering Report from PennDOT/LTAP engineer for Hazle Street and Dump Road in Weston, Gross Road, and a few others in Black Creek. Dr. Rohrbach requested for this engineer to come and review these roads in our township. This was free, to our township.

Supervisor Rohrbach-
It was very nice to meet with you (1) and your road crew (3) on Thursday morning or your Technical Assistance Request (17370). As I noted we would cover 3 topics:

1. You had a question on the quality assurance and potential long term performance of the paving on Hazle Street (T-332). As we discussed, the Township staff was not involved in the QA of the paving and this was managed by the Township Engineer. I would recommend that you request the daily inspection reports for the contracted work. It is difficult to conduct a forensic analysis of the pavement without, reports, density testing, roller pattern, JMFs, certifications, photos, corers, etc. However, a visual analysis of the pavement indicates that the mat appears in good condition, with very minor raveling, possibly from truck or paver segregation. The failures appear to be potentially base failures propagating/reflecting from the milled areas that were reported to have been mill/filled. It is difficult to make a determination without seeing the underlying soil/subbase material or knowing where the mill/fills were located. The centerline failure appears to be a potential joint failure resulting from "starving the joint"; the joint may be improperly compacted, resulting in further joint failure in the future. Please direct the contractor to seal this joint (entire length) as soon as possible as it is within the warranty period. I recommend you discuss this situation with the Township's Solicitor and Engineer and encourage the contractor to extend the warranty on this joint instead of removal and replacement. As we discussed, the Township also has the option in the 408 to accept substandard work at ½ payment which would entitle the Township to a refund. In order to prove the joint is improperly constructed, we would need to do a few things. First contact Municipal Services; I've already done that. Second obtain all available records. Third obtain cores through the joint. If the joint is not properly compacted, it will be evident in the cores. Example photos to follow.

2. We discussed dirt and gravel maintenance. It is unfortunate that you were unable to attend the dirt and gravel class in Bloomsburg last week. I will be teaching the class again on the following dates:
5/2 in Gordon, PA (about 30 miles)
5/7 in Athens, PA (about 90 miles)
5/8 in Tunkhannock, PA (about 60 miles)
5/8 in Mansfield, PA (about 110 miles)
Hopefully you and the crew will be able to attend one of these classes. Although you do have an ESM qualified staff member, I would encourage you to at a minimum send your road foreman to this class. The person directly overseeing all construction and maintenance in the field on a regular basis should be trained. For example, our Township has 2 ESM trained staff. As the Engineer/Public Works Director (part-time employee/ESM trained) I complete all the grant applications, designs, cost estimates and permits; I am only out from time-to-time during construction. Prior to doing any of that, I meet with our Roadmaster (full time employee/ESM trained) and review our projects; he manages all construction. Please note neither of

Related Pages

Hazleton News 1
News & Media Website

Scotch Valley Bar & Restaurant
Restaurant

Skook News
News & Media Website

Hazleton RAPID TRANSIT SYSTEM
Community Organization

English (US) · Español ·
Português (Brasil) · Français (France) ·
Deutsch

Privacy · Terms · Advertising · Ad Choices ·
Cookies · More
Facebook © 2018

See more of Black Creek Township Concerned Citizens on Facebook

Log In            or            Create New Account

9/5/2018                          Engineering Report from PennDOT/LTAP... - Black Creek Township Concerned Citizens | acebook

Township design sketches and quantities for you to create a cost estimate and submit you grant application. You will also want to discuss Hill Top Drive (T-316) with Mr. Schlauch as a grant opportunity. As both roads are entrenched, eroding with deep rills and ditches, causing sedimentation of nearby waterways, concentrating flow on extremely steep slopes, he will need to advise you as to which road he would like you to address first. I provided Mr. Schlauch with a verbal assessment of each of the two roads, but you will need to meet with him on site. Please also discuss the HOA portion of the roadway with him.

3. Gross Road (T-310) is a low volume dead end (partially chipped/paved) road which it appears that the residents may be self-maintaining. I would caution the Township in allowing residents to place materials in the Township's right-of-way in an attempt to stabilize the roadway. The fines and gravel (possibly AASHTO 8's) are not going to stabilize the roadway and may open the Township to higher maintenance cost and/or liability in the future. This road may qualify for low volume funding through Mr. Schlauch. I would encourage the Township to consider full depth reclamation with a paved asphalt surface as well as both surface and subsurface drainage improvements. As it appears this road was "dead ended" prior to current Liquid Fuels requirements so an 80' cul-de-sac is not required; however, the Township should consider installing a "tee" turnaround for garbage trucks, plows, and emergency vehicles.

You had mentioned a few safety related issues, which I will refer to Mr. Patrick Wright, PE at LTAP. You should request an additional tech assist to review location, warrant, and condition of the guiderail in question. You should also request that Mr. Wright review the intersection sight distance and alignment of the intersection in question. I also note that numerous of your roads appear improperly signed, please discuss this issue with Mr. Wright.

I recommend that you and the crew continue your LTAP maintenance training with Asphalt Common Maintenance Problems and Unpaved Roads, followed by FDR, Seal Coats, Drainage and Posting & Bonding. Based on the signing, you should also sign up for Road Safety Audits, Traffic Sign Basics, and Speed Limits. The LTAP classes are free of charge and held at convenient locations throughout Pennsylvania. If there is a specific class you would like to take or would like to host at your facility, classes can be scheduled through your regional planning commission or by calling LTAP directly at (800) FOR-LTAP and speaking to Barbara Jean, Tom, or Lou. You have a very nice facility and it would be great to teach a class for you at your facility.

Sincerely,

PennDOT LTAP Engineer

Jason A. Snyder, PE, F ASCE

See more of **Black Creek Township Concerned Citizens** on Facebook

| Log In | or | Create New Account |
|--------|----|--------------------|

09/27/2018 08:24 FAX   5703843799                    BLACKCREEK-TWP                                    ✉018/026

# Exhibit B

73487

## DONALD G. KARPOWICH ATTORNEY-AT-LAW, P.C.

85 Drasher Road
Drums, PA 18222

Phone (570) 788-6647
Fax (570) 788-0654
www.karpowichlaw.com

April 27, 2018

John Ross
126 Shannon Drive
Drums, PA 18222

Dear Mr. Ross:

I am writing to you as the Solicitor for Black Creek Township.

This letter is being written to inform you that the Black Creek Township Board of Supervisors are requesting to meet with you on Saturday, May 5, 2018 at 10:00 a.m. at the Black Creek Township Municipal Building, 1984 Tomhicken Road, Rock Glen, PA 18246  This is a pre-disciplinary meeting as a result of the incident that occurred on April 11, 2018 a approximately 9:00 AM with Supervisor Joseph Lescowitch.

Depending on the outcome of the meeting, the Board of Supervisors may reprimand you, suspend you without pay, or dismiss you from your employment with the Township.

In the interim, you are suspended from your employment with the Township with pay. You are also not to contact any Township employee or enter upon any Township property while under suspension.

Very Truly Yours,

Donald G. Karpowich, Esquire

cc:     Bonnie Adams, Chairperson, Black Creek Township Board of Supervisors

09/27/2018 08:24 FAX  5703843799          BLACKCREEK-TWP                      020/026

# Exhibit C

09/27/2018 08:24 FAX  5703843799          BLACKCREEK-TWP                          ✐021/026

η348⁻

4/11/18

I arrived at the township at approximately 7:20am. Bonnie Adams was not at work. Around 8:00a.m., I was told by Bonnie Wagner that Adams called and decided to take the day off. I was not notified of this.

At approximately 8:00am, I called our road leader, John Ross, and asked if he and the guys could wait at the garage for a few minutes, I wanted them to participate in a meeting. LTAP Engineer Jason Snyder arrived at the Black Creek Township Municipal Complex at approximately 8:05am for a consult on the Hazle Street cracks and segregation, to assess "Dump Road" in Weston, other municipal roads and their conditions and educate the road crew on proper procedures and guidelines for their repair.

We walked to the garage, I introduced Mr. Snyder to the road crew and explained what he was going to be doing for us, and we all drove to Hazle Street. Immediately upon arrival at Hazle Street, Joe Lescowitch stopped in his truck and asked what we were doing. I explained that LTAP was assessing the cracks in the road and he drove away.

Approximately 15 minutes later, we were examining another set of cracks further down the road, when Joe Lescowitch returned. He pulled his truck over and stopped in what I can only describe as aggressive in nature. Upon getting out of his truck, it was evident by his facial expression that he was disgruntled. He started yelling at us before he even crossed to our side of the road, saying that he wanted to know the point of this meeting, which was already explained to him the first time. I tried to introduce Joe to the engineer and again explained that the engineer was here from LTAP to examine the cracks, before I could continue explaining what we were doing, Joe interrupted me, raised his voice and demanded that the workers should be working on the roads, that they have a lot on the list to do. I replied it was more important for them to be here and be learning about our roads. He again said to me they were to be working on the roads; that was more important. I said I wanted them to stay and be educated by LTAP. Joe then yelled at all of the guys and said that if they didn't get back to work, they would all be looking for new jobs. I began to say I asked them to come and that no one was getting fired, when Road Leader John Ross told Joe that he did not appreciate being threatened. Joe said to John that he needed to get his work done. John said that he always gets his works done. He wanted Joe to tell him when he ever didn't get his work done. Joe told him he should be sweeping Weston. John said they were told not to sweep Weston because it would be too dusty today. John told Joe that he did not want to be drug into the bullshit between the supervisors.

At some point, Joe started yelling at the LTAP engineer, Jason Snyder, about the appointment time, criticizing him for making an appointment when townships should be working. I told Joe not to yell at the engineer. The engineer explained that was the purpose of his appointment with us. He was there to help us learn how to fix the roads. John told Joe that the engineer was here to help.

John wanted Joe to stay to resolve the issue at hand, but Joe ignored his request, turned around and walked across the road back to his truck and drove away.

09/27/2018 08:25 FAX   5703843799          BLACKCREEK-TWP                            022/026

I apologized to the LTAP engineer for Joe's behavior.

John was upset by Joe's threat of being fired, since he and the other guys were not doing anything wrong, they only listened to me; he said that he didn't like being drug into this. He said he was going to call Bonnie Adams, because of Joe's threat. I could hear him say to Bonnie that he didn't want to be involved in what was going on between the supervisors and that Joe told him they were going to be fired if they didn't get back to work. Then he said, you tell me when I have ever gone behind your back. You tell me when. The conversation ended.

John came back to our group and said that Bonnie also gave them orders to get back to work. He explained how Bonnie told him that he has been going behind her back for 6 months. When he asked her to tell him when, she told him she didn't have time for this. He also stated that she told him she knows where his truck goes, every time it leaves. We could not figure out what she was insinuating.

Since the two other supervisors told them to go back to work, that was a majority, so I told the guys they had to go back to work. Mr. Snyder recommended they return, as well. They left in the Dodge to go back to the garage and I took the engineer in the Chevy pickup to see Dump Road and several roads, after that.

Saura Rohrbach, D.C.

Black Creek Township Supervisor/Roadmaster

09/27/2018 08:25 FAX  5703843799          BLACKCREEK-TWP                    ☑ 023/026

# Exhibit D

7343

## BLACK CREEK TOWNSHIP SUPERVISORS

P.O. BOX 3    LUZERNE COUNTY
ROCK GLEN, PA. 18246
PHONE (570) 384-3206          FAX (570) 384-3799

June 6, 2018

John Ross
126 Shannon Drive
Drums, PA 18222

Dear Mr. Ross:

This letter is being written to inform you that as a result of the incident that occurred on April 11, 2018 at approximately 9:00 AM with Supervisor Joseph Lescowitch, your position with Black Creek Township is terminated effectively immediately.   A majority of the Board of Supervisors voted in favor of your termination at the Black Creek Township Regular Meeting of June 5, 2018.

It is my understanding that you have made arrangements with Supervisor Rohrbach to return your keys and retrieve your belongings with a Constable being present.

Sincerely,

Bonnie Adams, Chairperson