# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| JOHN ROSS, | : | No.3:18cv1996 |
| --- | --- | --- |
|     **Plaintiff** | : | |
| | : | (Judge Munley) |
|     v. | : | |
| | : | |
| BLACK CREEK TOWNSHIP, | : | |
| JOSEPH LESCOWITCH, individually | : | |
| and in his official capacity, and | : | |
| BONNIE ADAMS, individually and in | : | |
| her official capacity, | : | |
|     **Defendants** | : | |

## MEMORANDUM

Before the court for disposition is a motion to dismiss filed by Defendants Black Creek Township, Joseph Lescowitch, and Bonnie Adams in this Pennsylvania Whistleblower Law violation case. The parties have briefed the pending motion, and it is ripe for disposition.

**Background**

Plaintiff John Ross worked for Black Creek Township (hereinafter "Black Creek") as the road foreman in charge of supervising Black Creek's road crew since 2012. (Doc. 1-2, Compl. ¶ 6).[1] On June 17, 2017, an independent company from Bloomsburg, Pennsylvania, M&J Excavation, paved a road in

---

[1] Although plaintiff's document is labeled as his "Amended Complaint," for simplicity we will refer to it as the Complaint.

Black Creek known as Hazle Street. (Id. ¶ 7). M&J Excavation paved Hazle Street under the supervision of Black Creek engineer, RJD Engineering. (Id. ¶ 9). Plaintiff, who believed that Black Creek supervisors voted to pave Hazle Street without advertising for bids in accordance with the Second Class Township Code for the Commonwealth of Pennsylvania, noticed that Hazle Street's pavement was developing large cracks not long after M&J Excavation had finished its work. (Id. ¶¶ 10, 11). Plaintiff wanted Black Creek to have Hazle Street fixed while it was still under warranty, so he raised his concerns about the cracks to Bonnie Adams and Joseph Lescowitch, who were both Black Creek Supervisors. (Id. ¶ 12). Plaintiff also recommended that Black Creek should investigate why Hazle Street had deteriorated so quickly after being paved. (Id. ¶ 13).

According to the plaintiff, his concerns were dismissed by both Adams and Lescowitch. (Id. ¶¶ 14, 15). Plaintiff then voiced his concerns about the condition of Hazle Street to newly elected Black Creek Supervisor Saura Rohrbach. (Id. ¶ 16). The plaintiff, who associated socially with Rohrbach and her family, knew that Lescowitch and Adams often exhibited hostility toward the Rohrbach family. (Id. ¶ 51). Nevertheless, upon hearing plaintiff's concerns, Rohrbach contacted an independent engineer from PennDOT, Jason Snyder, and asked him to come examine the road. (Id. ¶¶ 16-18). On April 11, 2018, while the plaintiff, Rohrbach, two other members of Black Creek's road crew, and Snyder were examining the

condition of Hazle Street, Lescowitch drove past them and asked Rohrbach what they were doing. (Id. ¶ 21). Rohrbach proceeded to explain that Snyder was there to examine why Hazle Street's pavement had deteriorated. (Id.) The plaintiff alleges that although Lescowitch initially drove away, he eventually returned to Hazle Street and began verbally attacking the plaintiff and Rohrbach. (Id. ¶ 22). Lescowitch then threatened to terminate plaintiff's employment for inspecting Hazle Street with Rohrbach while he should have been sweeping streets. (Id.)

Despite a report from Snyder which later confirmed that Hazle Street's pavement was indeed failing, the plaintiff was suspended without pay for this incident on April 27, 2018. (Id. ¶¶ 24, 25). Plaintiff's suspension remained in place until a township meeting took place on June 5, 2018. (Id.) At this meeting, which took place in front of approximately fifty citizens of Black Creek Township, Rohrbach read a statement prepared by Snyder which described his view of the Hazle Street incident and portrayed Lescowitch as the aggressor. (Id. ¶¶ 28, 44). Lescowitch and Adams, however, contradicted this statement and announced to the attendees that the plaintiff was not fit for his job and was the true aggressor. (Id. ¶ 44). Ultimately, Lescowitch, Adams, and Rohrbach voted 2-1 to terminate plaintiff's employment with Black Creek as a result of the April 11, 2018, Hazle Street incident. (Id. ¶¶ 27, 29).

Based on the foregoing facts, on October 16, 2018, plaintiff filed the instant lawsuit against Black Creek Township, Joseph Lescowitch, individually and his official capacity, and Bonnie Adams, individually and in her official capacity in the Court of Common Pleas of Luzerne County. (Doc. 1-2). The matter was thereafter removed to this court. (Doc. 1, Notice of Removal). The plaintiff's three count complaint alleges violation of the Pennsylvania Whistleblower Law, 43 PA. STAT. AND CONS. STAT. ANN. § 1421, et seq., a state law defamation claim, and violation of the plaintiff's First Amendment right to freedom of association based on the plaintiff's friendship with Rohrbach and her family. On October 23, 2018, the defendants filed the pending motion to dismiss. (Doc. 3). The parties have briefed the motion, bringing the case to its present posture.

**Jurisdiction**

Because this case alleges a violation of the First Amendment to the Constitution of the United States of America, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

The defendants filed their motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, " 'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.' " Colburn v. Upper Darby Twp., 838 F.2d 663, 665–66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe " 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234–35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994)

5

(citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim establishing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted).

**Discussion**

The defendants move to dismiss plaintiff's complaint on the basis that the complaint fails as a matter of law. The defendants first contend that the plaintiff raises no viable Pennsylvania Whistleblower Law claim against the defendants, as the defendant's report that Hazle Street was deteriorating does not rise to the level of "reported waste" under the Whistleblower statute. Next, the defendants argue that the plaintiff's defamation claim also fails because not only were the alleged comments made during the public meeting regarding plaintiff's employment not defamatory in nature, but as "high public officials," the defendants are immune from a defamation suit. Finally, the defendants attack the

6

plaintiff's First Amendment right of association claim. The defendants contend that the asserted association is not the type of relationship protected by the First Amendment, and the relationship, by plaintiff's own admission, was not the motivating or a substantial factor in his termination, thus the claim must fail. Because our jurisdiction to hear this case lies with the plaintiff's First Amendment claim, we will address this issue first.

**I.     Count III – First Amendment Right to Freedom of Association**

As the basis for his First Amendment claim, the plaintiff alleges that he was terminated, at least in part, because he associates with the Rohrbach family on a social basis. The plaintiff contends that Saura Rohrbach, the Black Creek Supervisor who listened to plaintiff's concerns about the Hazle Street road conditions and ultimately organized a review of the conditions by a third party, is often subjected to hostility by Defendants Lescowitch and Adams. The plaintiff alleges that because he hunts on the Rohrbach family property and spends time with Rohrbach and her parents, the defendants were in effect punishing him for this relationship by terminating his employment.

The defendants argue that the plaintiff's claim must be dismissed because, first and foremost, the plaintiff's friendship with the Rohrbach family is not the type of association protected by the First Amendment. Second, even if it does fall into a category of association protected by the First Amendment, the defendants

contend that the association was not a substantial or motivating factor in plaintiff's termination. After careful consideration, we agree with the defendants.

The "right of free association" is "a right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society." Shelton v. Tucker, 364 U.S. 479, 485 (1960). Thus, " 'impediments to the exercise of one's right to choose one's associates can violate the right of association protected by the First Amendment.' " Id. (quoting Hishon v. King & Spaulding, 467 U.S. 69, 80 n. 4 (1984)). Courts have described two types of freedom of association claims.

First, a " 'freedom of intimate association,' " exists. Salvation Army v. Dept. of Community Affairs, 919 F.2d 183, 198 (3d Cir. 1990) (quoting Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984)). This type of association "attaches only to 'certain kinds of highly personal relationships such as marriage and family relationships, which are essential to 'the ability independently to define one's identity that is central to any concept of liberty.' " Id. The second type of freedom of association described by courts is "freedom of expressive association." Id. Such associational protection exists because "the right to engage in activities protected by the First Amendment implies 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational,

religious, and cultural ends.' " Board of Directors of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 527, 548 (1984) (quoting Roberts, 468 U.S. at 619).

The plaintiff alleges that the defendants violated his right to freedom of intimate association based on, what we construe from the pleadings to be a social relationship with Rohrbach and her family. As explained above, however, the First Amendment right to freedom of intimate association does not afford constitutional protection for social relationships. Gruenke v. Seip, 225 F.3d 290 (3d Cir. 2000). "Only relationships 'distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship' are likely to implicate protection." Rode v. Dellarciprete, 845 F.2d 1195, 1204-05 (3d Cir. 1988) (quoting Roberts, 468 U.S. at 620).

Here, the plaintiff does not allege a close, intimate relationship of the type recognized as protected by Roberts. In fact, plaintiff's complaint significantly lacks details regarding his relationship with Rohrbach or her family. Instead, plaintiff points out that other people, specifically Defendants Lescowitch and Adams, have noted that the plaintiff "spen[ds] too much time on the Rohrbach property[,]" and that he "was too close to the Rohrbach family, specifically Rohrbach's father and mother." (Doc. 1-2, Compl. ¶¶ 52, 53). Based on these allegations, we cannot conclude that the plaintiff's relationship with Rohrbach

was anything more than a social relationship, thus falling outside the ambit of the First Amendment. Accordingly, the Court will grant the defendants' motion with respect to this claim.

**II. Remaining State Law Claims**

As we noted above, our jurisdiction in this case rests in plaintiff's First Amendment violation claim. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). In any civil action of which the district courts have original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As such, plaintiff's Pennsylvania Whistleblower Law violation claim and state law defamation claim were able to proceed under supplemental jurisdiction.

At this early stage in the litigation, upon the dismissal of the single claim over which we have original jurisdiction, we decline to retain supplemental jurisdiction over the remaining state claims. We find that the issues that remain in this action are more appropriate for a state court to decide. See Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 640 (2009) (holding that a district court's decision whether to exercise supplemental jurisdiction after dismissing

10

every claim over which it had original jurisdiction is purely discretionary). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988). As such, we will remand Count I and Count II of plaintiff's complaint to the Court of Common Pleas of Luzerne County. See Id. at 357 ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate").

**Conclusion**

For the foregoing reasons, defendants' motion to dismiss (Doc. 3) will be granted as it pertains to plaintiff's Count III First Amendment violation claim. The remaining claims will be remanded to the Court of Common Pleas of Luzerne County. An appropriate order follows.

BY THE COURT:

Date: January 9, 2019

s/ James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Judge**

11